**Oma BRUMFIELD, Petitioner,**

v.

**James STINSON, Superintendent, Green Haven Correctional Facility, Respondent.**

No. 98–CV–0233E(F).

United States District Court, W.D. New York.

Dec. 4, 2003.

610

Oma Brumfield, Comstock, NY, Pro se.

Howard R. Relin, District Attorney, Monroe County (Wendy Evans Lehman, Assistant District Attorney, of Counsel), Rochester, NY, for Respondent.

## ORDER

ELFVIN, Senior District Judge.

The Honorable Leslie G. Foschio, a Magistrate Judge in this judicial district, having conducted all proceedings necessary to determine the merits of the factual and legal issues presented by this action, pursuant to this Court's referral under 28 U.S.C. § 636(b)(1)(B) and having on November 12, 2003 filed his Report and Recommendation concerning such and no objection thereto having been made, it is hereby

*ORDERED* that Judge Foschio's Report and Recommendation is confirmed in its entirety, that the Petition shall be dismissed, that this Court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue and this case shall be closed.

## REPORT and RECOMMENDATION

FOSCHIO, United States District Judge.

### *JURISDICTION*

Petitioner Oma Brumfield, acting *pro se,* commenced this action on April 7, 1998, requesting habeas corpus relief under 28 U.S.C. § 2254. The matter was referred to the undersigned by the Honorable John T. Elfvin on July 10, 1998, for all proceedings necessary to reach a determination in this matter pursuant to 28 U.S.C. § 636(b)(1)(b). (Docket Entry Item No. 7).

### *BACKGROUND*

In August of 1995, Petitioner ("Brumfield") was convicted of Aggravated Assault upon a Police Officer, Robbery in the First Degree, and Grand Larceny in the Third Degree. Brumfield contends that his conviction should be vacated for the following six reasons: (1) the jury's verdict on aggravated assault was against the weight of the evidence, (2) the trial court erred by refusing to redact a prejudicial sentence from a written statement Brumfield made, (3) the trial court made an erroneous *Sandoval* ruling, (4) the trial court erred by excusing a sworn juror over Brumfield's objection, (5) the cumulative effect of the trial court's errors, and (6) the trial judge's sentence was harsh and excessive. (Docket Entry Item No. 1).

### *FACTS* [1]

On the afternoon of December 16, 1994, while on routine patrol, Rochester Police Sergeant James Strassner received a radio

---

1. Taken from the Petition and the record of proceedings in state court.

dispatch regarding a bank robbery at the Marine Midland Bank on 1500 Hudson Avenue in Rochester, New York. (T. at 487–88).[2] The dispatch contained a description of the suspected robber and the direction in which the suspect was traveling from the bank. (T. at 490, 494–95). Sergeant Strassner, who was nearby, searched the surrounding area. (T. at 494–96). Approximately twelve blocks away from the bank, Sergeant Strassner noticed Brumfield who matched the suspect's description. (T. at 496).

Sergeant Strassner stopped his vehicle, got out, and instructed Brumfield to stop so that he could speak with him. (T. at 498). Brumfield kept walking and said "leave me alone." (T. at 499, 501). Sergeant Strassner pursued Brumfield and observed a plastic bag with dye on it under Brumfield's coat. (T. at 501). As the bag matched the description of the bag taken from the bank, Sergeant Strassner grabbed Brumfield by his biceps and a struggle ensued. (T. at 501–02). During the course of the struggle, Sergeant Strassner was shot in the abdomen. (T. at 503). Sergeant Strassner fired two shots at Brumfield as Brumfield fled the scene. (T. at 505). Brumfield left his coat and the plastic bag of money behind and was soon apprehended. (T. at 763, 805, 839–40). Other officers came to Sergeant Strassner's aid a few minutes later, (T. at 522, 761–62, 772, 784–85), and drove Sergeant Strassner to the Rochester Hospital where he spent approximately twenty-five days recovering from his gunshot wound, in-cluding two weeks in the intensive care unit. (T. at 524).

Following these events, Brumfield provided statements to the police in which he admitted that he was involved in the bank robbery. (T. at 1062, 1071). Brumfield stated that when Sergeant Strassner approached him, he resisted because he "didn't want to go back to jail because [he] had just got out." (T. at 1063–65). Brumfield's statements were found to be admissible by the trial court following a *Wade/Huntley*[3] hearing. (*Wade/ Huntley* Hearing at 1–413; T. at 1065).

On December 23, 1994, Brumfield was indicted by a Monroe County Grand Jury on one count of Attempted Murder in the First Degree, in violation of N.Y. Penal Law, § 110.00 and § 125.27(1)(a)(i) (McKinney 1998)[4]; one count of Aggravated Assault upon a Police Officer, in violation of N.Y. Penal Law, § 120.11; one count of Robbery in the First Degree, in violation of N.Y. Penal Law, § 160.15(4); and one count of Grand Larceny in the Third Degree, in violation of N.Y. Penal Law, § 155.35.

Brumfield pled not guilty to the charges in the Indictment and a jury trial was conducted between August 21 and August 31, 1995 before Monroe County Court Judge John Connell. At trial, Brumfield's defense to the charges of Aggravated Assault and Attempted Murder was that he lacked the requisite intent to commit those crimes. Brumfield offered no defense to the bank robbery charges.

**2.** References preceded by "T." are to pages of the transcript of Brumfield's trial, submitted to the court by Respondent as part of Brumfield's state court records.

**3.** *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identifi-cation procedures); *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) (trial court must conduct pretrial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

**4.** Unless indicated, all references to the N.Y. Penal Law are to McKinney 1998.

On August 31, 1995, the jury found Brumfield guilty of the Aggravated Assault, Robbery in the First Degree, and Grand Larceny in the Third Degree charges, and not guilty of Attempted Murder in the First Degree. (T. at 1430–31). On October 5, 1995, Brumfield was sentenced to 12½ to 25 years on the Aggravated Assault count to run consecutively to a sentence of 12½ to 25 years on Brumfield's Robbery in the First Degree conviction. (S. at 22–23).[5] Those sentences would run concurrently with a sentence of 2 1/3 to 7 years for Grand Larceny in the Third Degree. (S. at 23).

Following a timely appeal to the Appellate Division, New York Supreme Court, Fourth Department, Brumfield's conviction was unanimously affirmed. *People v. Brumfield,* 236 A.D.2d 839, 654 N.Y.S.2d 74 (4th Dep't 1997)(Memorandum Decision).[6] The Appellate Division found that Brumfield's argument that his conviction was against the weight of the evidence was without merit. *Brumfield,* 654 N.Y.S.2d at 74. Further, the court rejected Brumfield's argument that a portion of his statement should have been redacted. *Id.* The court held that the "statement was admissible to show defendant's motive and intent, and its probative value outweighed its prejudicial effect." *Id.* The court also concluded that the trial court's *Sandoval* ruling permitting the prosecutor to cross examine Brumfield about a prior robbery conviction "was not an abuse of discretion." *Id.* Lastly, the court held that Brumfield's remaining contentions were also without merit. *Id.*

Brumfield sought leave to appeal to the New York Court of Appeals. Leave was denied on April 7, 1997. *People v. Brumfield,* 89 N.Y.2d 1032, 659 N.Y.S.2d 863, 681 N.E.2d 1310 (1997).

## DISCUSSION

As noted, the Petition was filed on April 7, 1998. Review of federal habeas corpus petitions filed by state prisoners on or after April 24, 1996 is governed by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") of 1996. 28 U.S.C. § 2254.

### I. *Timeliness of the Petition*

AEDPA provides a one-year statute of limitations for the filing of habeas petitions. 28 U.S.C. § 2244(d)(1). The limitations period, where petitioner is in custody pursuant to the judgment of a state court, runs from the latest of four dates. 28 U.S.C. § 2244(d)(1)(A-D). In this case, the latest of the four dates is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year period of limitations is tolled for periods of time during which a properly filed application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz,* 199 F.3d 116, 118–19 (2d Cir.1999).

The court finds the Petition timely. Brumfield's conviction became final on July 6, 1997, *i.e.,* 90 days after the New York Court of Appeals denied Brumfield's request for leave to appeal during which Brumfield could seek direct review by filing a petition for a writ of certiorari with the United States Supreme Court. The Clerk's office Docket Sheet notes that the Petition was filed on April 7, 1998, within AEDPA's one-year filing period.

---

**5.** References preceded by "S." are to pages of the transcript of the sentencing proceeding held before County Court Judge John Connell.

**6.** A copy of Brumfield's appellate counsel's brief to the Appellate Division is attached as Appendix B to Respondent's Answer, (Docket Entry Item No. 5).

## II. *Exhaustion/Procedural Bar*

 In reviewing habeas petitions, federal courts do not function as appellate courts to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts; rather, the court determines whether the proceedings in the state court amounted to a violation of federal constitutional rights. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Federal review of a state court conviction is limited to errors of federal constitutional magnitude that denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). A state prisoner applying for relief under 28 U.S.C. § 2254 is not entitled to an evidentiary hearing by the federal court, but the granting of a hearing is within the discretion of the federal district court. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 4–5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), citing *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Pagan v. Keane,* 984 F.2d 61, 63 (2d Cir. 1993). The state court's determination as to evidentiary matters is presumed to be correct unless one of the specified conditions pursuant to 28 U.S.C. § 2254(e), formerly 2254(d), is found to exist or unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Absent these factors, the burden rests on the petitioner to establish, by clear and convincing evidence, that the factual determination is erroneous. 28 U.S.C. § 2254(e)(1).

 Before a federal court may review a state prisoner's habeas petition, the prisoner must exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), citing cases. In order to satisfy the exhaustion requirement, a habeas petitioner "must fairly present his federal claims to the highest state court from which a decision can be had, informing the court of the factual and legal bases for the claim asserted." *Diaz v. Mantello,* 115 F.Supp.2d 411, 416 (S.D.N.Y.2000), citing *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990).

As noted, Brumfield contends that his conviction should be vacated on six separate grounds. Discussion, *supra,* at p. 611. In this case, Brumfield's appellate counsel's letter to the New York Court of Appeals seeking leave to appeal asserted only that the admission of Brumfield's statement was error because it was more prejudicial than probative. Ltr., Leave to Appeal, at 1–3.[7] Although counsel's letter application did not specifically reiterate Brumfield's other claims, the letter referenced the other arguments submitted to the Fourth Department and requested that those arguments "be considered in conjunction with this application." *Id.* at 3.

 Based on the record, the court finds that Brumfield fairly presented all his present claims to the New York Court of Appeals for purposes of satisfying the exhaustion requirement. *Morgan v. Bennett,* 204 F.3d 360, 370 (2d Cir.2000) (asking court to "consider and review all issues outlined in defendant-appellant's brief and *pro se* supplemental brief" was sufficient to alert Court of Appeals that review was being sought on all claims raised in *pro se* brief); *see Davis v. Strack,* 270 F.3d 111,

---

7. This document is attached to Respondent's Answer as Appendix F. (Docket Entry Item No. 5).

122 (2d Cir.2001) (same); *cf. Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir.2000) (arguing one claim in letter seeking leave to appeal to New York Court of Appeals while attaching appellate division briefs, without explicitly alerting Court of Appeals to each claim raised, does not fairly present such claims to state's highest court for purposes of habeas exhaustion requirement). Therefore, all of Brumfield's claims are considered exhausted. Further, based on the record, there is no procedural bar precluding federal habeas review of the merits of Brumfield's claims. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

## III. Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by AEDPA, a federal court must give substantial deference to a state court determination that has "adjudicated [the federal constitutional claim] *on the merits*." 28 U.S.C. § 2254(d) (italics added); *Sellan v. Kuhlman*, 261 F.3d 303, 309–10 (2d Cir. 2001). Specifically, AEDPA requires that where a state court has adjudicated the merits of a petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court further construed the phrases "contrary to" and "an unreasonable application of" clearly established federal law. According to the Court, a state court decision is "contrary to clearly established federal law," 28 U.S.C. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. A state court decision involves "an unreasonable application" of Supreme Court caselaw if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Both AEDPA, and its predecessor statute, recognize that a presumption of correctness shall apply to state court findings of fact. *Whitaker v. Meachum*, 123 F.3d 714, 715 n. 1 (2d Cir.1997). AEDPA also requires a petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *LanFranco v. Murray*, 313 F.3d 112, 117 (2d Cir.2002). A presumption of correctness applies to findings by both state trial and appellate courts. *Galarza v. Keane*, 252 F.3d 630, 635 (2d Cir.2001); *Whitaker*, 123 F.3d at 715 n. 1.

A federal habeas court must apply the § 2254(d) standard where the state court has "adjudicated [the federal claim] on the merits." 28 U.S.C. § 2254(d). If the claims have not been adjudicated on the merits, the federal court applies the pre-AEDPA *de novo* review standard, even where the petition was filed after the effective date of the statute.[8] *See Sellan*, 261

---

**8.** As noted, AEDPA applies to petitions filed on or after the statute's April 24, 1996 effective date. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., writing for the majority); *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir.

F.3d at 314; *Boyette v. Lefevre,* 246 F.3d 76, 89, 91 (2d Cir.2001).

In *Sellan,* the Second Circuit held that a federal claim is adjudicated on the merits when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan,* 261 F.3d at 312. In other words, in order to invoke the deferential standards of § 2254(d)(1), "the state court need only dispose of the Petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio v. Artuz,* 269 F.3d 78, 93–94 (2d Cir.2001), citing *Sellan,* 261 F.3d at 312. If there is no indication that the federal claim has been decided solely on a state procedural grounds, the federal claim will be considered to have been adjudicated on the merits. *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002).

■ The court concludes that, in this case, the Appellate Division decided all of Brumfield's claims on the merits when it unanimously affirmed his conviction. *Brumfield,* 236 A.D.2d 839, 654 N.Y.S.2d 74. Although the Appellate Division's decision does not state all of its reasons for its decision rejecting Brumfield's appeal, there is also no indication that the claims raised on Brumfield's direct appeal were decided by the appellate court on state procedural grounds.[9] *See Brown,* 283 F.3d at 498. Failure to state specific reasons for a state court adjudication on federal claims raised on appeal does not avoid a finding that the state court determination was on the merits of each ground presented to the appellate court for purposes of applying AEDPA's deferential standards. *See, e.g., id.* ("[b]ecause there is no basis either in the history of the case or the opinion of the Appellate Division for believing that [petitioner's] Sixth Amendment claim was denied on procedural or any other nonsubstantive grounds, we find that his claim was 'adjudicat[ed] on the merits' by the state court, and therefore review his Sixth Amendment claim under the more deferential standard set forth in § 2254"), citing *Sellan,* 261 F.3d at 314.

## IV. *Claims Raised in Petition*

### 1) *Verdict Against Weight of Evidence / Sufficiency of Evidence*

■ Brumfield asserts that the jury's verdict with respect to Aggravated Assault was against the weight of the evidence. Petition ¶ 12(a) (Ground One). However, to contend that a guilty verdict was against the "weight of the evidence" does not state a cognizable constitutional claim for federal habeas relief. *See Walton v. Ricks,* 2002 WL 32009795, at *6 (S.D.N.Y. March 19, 2002) ("[T]he 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5) ...."), quoting *People v. Bleakley,* 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672, 674–75 (1987). Therefore, the court will construe the *pro se* Petition as raising a claim challenging the legal sufficiency of the evidence in violation of due process.[10]

2000) (*per curiam* ), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

9. In its Memorandum Decision, the Fourth Department discussed Brumfield's insufficiency of evidence, redaction, and *Sandoval* ruling grounds and stated it found Brumfield's "remaining contentions ... without merit." 654 N.Y.S.2d at 74.

10. In this regard, the court notes that the legal sufficiency of the evidence was addressed by the Appellate Division. *See Brumfield,* 654 N.Y.S.2d at 74 (finding that Brumfield's "conviction is supported by legally sufficient evidence and is not against the weight of the evidence").

■ "A habeas petitioner challenging the sufficiency of the evidence supporting his conviction bears a heavy burden." *Knapp v. Leonardo,* 46 F.3d 170, 178 (2d Cir.1995), *cert. denied,* 515 U.S. 1136, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995). The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Fiore v. White,* 531 U.S. 225, 229, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001)(holding that "the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt").

■ In reviewing the sufficiency of the evidence, the court must first look to the relevant state law to determine the elements of the crime. *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002). Where facts presented at trial support conflicting inferences, a federal habeas court must presume that conflicts were resolved in favor of the prosecution. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. In making its assessment, a federal habeas court must "credit every inference that could have been drawn in the state's favor ... whether the evidence being reviewed is direct or circumstantial." *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.1988). The jury is also permitted to "draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

■ For the following reasons, the court finds that the jury's verdict as to the Aggravated Assault charge was supported by legally sufficient evidence. Under New York law, a person is guilty of Aggravated Assault upon a Police Officer when "with intent to cause serious physical injury to a person whom he knows or reasonably should know to be a police officer ... engaged in the course of performing his official duties, he causes such injury by means of a deadly weapon or dangerous instrument." N.Y. Penal Law § 120.11. Intent is established by proving what was in the defendant's mind at the time of the crime. *Mallette v. Scully,* 752 F.2d 26, 32 (2d Cir.1984). Intent need not be proven by the defendant's express statement but may be inferred. *Fratarcangelo v. Smith,* 792 F.2d 40, 43 (2d Cir.1986). "[C]ircumstantial evidence [on this issue] is as persuasive as direct evidence." *Mallette,* 752 F.2d at 32. Such circumstantial evidence may include a defendant's actions subsequent to the crime, such as falsehoods or flight. *Id.,* citing cases.

■ In the present case, there is no dispute that Sergeant Strassner was a police officer performing his official duties when he encountered Brumfield. (T. at 1143–44). Further, Brumfield stated that he knew that Sergeant Strassner was a police officer. (T. at 1143–44). The evidence adduced at trial established that Sergeant Strassner was shot in the abdomen by a bullet fired from Brumfield's gun, a deadly weapon. (T. at 503). As a result, Sergeant Strassner suffered serious physical injury. (T. at 524). Accordingly, the only genuine dispute is whether the prosecution introduced legally sufficient evidence to prove that Brumfield possessed the intent to cause Sergeant Strassner serious physical injury, *i.e.* whether Brumfield intentionally fired the gun at Sergeant Strassner.

The prosecution's expert at trial, Robert Stanton, testified that Brumfield's gun was fired twice. (T. at 1225–27). Brumfield argued that it was only fired once, and accidentally at that. However, Stanton also testified that Brumfield's gun was equipped with a safety device which pre-

vented it from firing unless three and a half pounds of pressure were placed on the trigger and the trigger was fully pulled. (T. at 1221–24).

Brumfield argues that the jury failed to give sufficient credit to the points his counsel brought out on cross examination of Stanton. *See* (Brumfield Appellate Division Brief at p. 10 [11]). Brumfield asserts that upon cross examination Stanton testified that the evidence demonstrated there were other explanations that could make it appear that Brumfield's gun was fired twice. (T. at 1243 –48). However, even though Stanton recognized these other possibilities, he maintained that they were far less likely and that it was more likely that Brumfield fired the gun twice. (T. 1255–57).

■ There is no constitutional requirement that a criminal jury resolve evidentiary inconsistencies in a defendant's favor. *See United States v. Walsh,* 194 F.3d 37, 52 (2d Cir.1999) (denying motion to vacate judgment as against the weight of the evidence based on inconsistent testimony as it is within jury's province to resolve evidentiary inconsistencies against defendant). Rather, under the Due Process Clause, conviction of a criminal offense requires proof of the defendant's guilt beyond a reasonable doubt. *See id.*

The above described testimony was sufficient for the jury to determine that (a) Sergeant Strassner was a police officer engaged in the performance of his official duties, and that Brumfield (b) possessed a deadly weapon or dangerous instrument, (c) intended to cause serious physical injury to Sergeant Strassner, (d) knew Sergeant Strassner was a police officer, and (e) did in fact cause serious physical injury

to Sergeant Strassner by firing his gun. Habeas relief is therefore unavailable on this claim and the Petition should be DISMISSED on this ground.

### 2) *Brumfield's Statement*

Brumfield's second claim is that the trial court erred by refusing to redact the sentence, "I didn't want to go back to jail because I had just got out," from a written statement he made to police. Petition ¶ 12(b) (Ground Two).

■ In general, "erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ of habeas corpus can be issued." *Underwood v. Kelly,* 692 F.Supp. 146, 150 (E.D.N.Y. 1988), *aff'd,* 875 F.2d 857 (2d Cir.1989); *see Chandler v. Moscicki,* 253 F.Supp.2d 478, 489 (W.D.N.Y.2003); *see also, Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) (stating that "[i]t is true that erroneous evidentiary rulings do not automatically rise to the level of constitutional error"). Brumfield must therefore demonstrate that the admission of the challenged evidence violated an identifiable constitutional right. *Roberts v. Scully,* 875 F.Supp. 182, 189 (S.D.N.Y.1995), *aff'd mem.,* 71 F.3d 406 (2d Cir.1995). On this issue, Brumfield bears a heavy burden. *Id.* Errors in the admission of evidence deprive a defendant of the fundamental guarantees of due process only when the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (internal quotations omitted). "Only a very narrow class of infractions violates fundamental fairness." *Sims v. Stinson,* 101 F.Supp.2d 187, 194 (S.D.N.Y.2000), cit-

---

11. Brumfield's Brief to the Appellate Division can be found at Docket Entry Item No. 5 at Appendix B. Brumfield's arguments to the Appellate Division are incorporated by reference in these proceedings.

ing *Dowling*, 493 U.S. at 352, 110 S.Ct. 668.

■ A habeas petitioner must prove that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985); *see Carroll v. Hoke*, 695 F.Supp. 1435, 1440 (E.D.N.Y.1988), *aff'd*, 880 F.2d 1318 (2d Cir.1989). The evidence erroneously admitted must have been "crucial, critical or highly significant." *Collins*, 755 F.2d at 19, citing *Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir.1982). Based upon the record before the court, the Fourth Department's conclusion that the evidence was properly admitted because it was highly probative of Brumfield's motive and intent was a reasonable application of clearly established law. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 413, 120 S.Ct. 1495.

■ The statement Brumfield made to the police was, as determined by the Fourth Department, probative of his motive and intent at the time of his assault on Sergeant Strassner. The court found the statement admissible because its probative value outweighed its prejudicial effect. *Brumfield, supra*, at 74. The trial judge offered to provide the jury with a limiting instruction with respect to Brumfield's statement. (T. at 1070). However, there is no indication in the record of the defense accepting that offer.

Even if the court were to find that the admission of Brumfield's statement was erroneous under state law, given the strength of the other evidence surrounding Brumfield's violent encounter with the officer, there is no basis to find that the admission of the statement was of a constitutional magnitude entitling Brumfield to habeas relief. Brumfield's comment about wanting to avoid jail does not negate a reasonable doubt that would have existed without it, given the other evidence supporting the jury's finding Brumfield intended to assault the officer. This claim is therefore without merit, and the Petition should accordingly be DISMISSED on this ground.

### 3) *Sandoval Claim*

■ Brumfield's third claim is that the trial court's pre-trial *Sandoval* ruling, allowing the prosecution to cross examine Brumfield regarding his commission of two prior crimes, was an abuse of discretion. Petition ¶ 12(c) (Ground Three).

As noted, "erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ of habeas corpus can be issued." *Underwood*, 692 F.Supp. at 150. "[T]he admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." *Jenkins v. Bara*, 663 F.Supp. 891, 899 (E.D.N.Y.1987)(denying habeas claim based on trial court's evidentiary ruling, following *Sandoval* hearing, that prior convictions could be used on cross examination). The Supreme Court has noted that, in order to preserve the issue of admissibility of prior convictions for review, a defendant must testify. *Luce v. United States*, 469 U.S. 38, 41–43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Otherwise, any harm that defendant faced is "wholly speculative." *Id.* at 41, 105 S.Ct. 460. "Second Circuit law has created a bright-line rule ... barring habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not to testify." *Shannon v. Senkowski*, 2000 WL 1683448,

at *6 (S.D.N.Y. Nov. 9, 2000), *Williams v. Dufrain,* 2002 WL 975304, at *7 (N.D.N.Y. April 19, 2002) (stating that petitioner's failure to testify at trial "is fatal to any claims arising out of a *Sandoval* type ruling"). Brumfield did not testify in his trial. Accordingly, Brumfield's third ground is without merit, and the Petition should be DISMISSED as to this ground.

### 4) *Excused Juror*

Brumfield's fourth claim is that the trial court committed reversible error by excusing a sworn juror over Brumfield's objection at trial. Petition ¶ 12(d) (Ground Four). Brumfield claims that James Hawkins, the only black juror sworn, was excused from the jury, before opening statements, over Brumfield's objection.

■■■■ "[A] court enjoys considerable discretion to remove any juror who is unable to perform his or her duties." *Taxiarhopoulos v. Spence,* 1992 WL 403112, at *5 (E.D.N.Y. Dec. 28, 1992); *see also, Carrasco v. David,* 2002 WL 1205750, at *5 (S.D.N.Y. June 4, 2002). A reviewing court will only find abuse of that discretion where the defendant has shown resultant prejudice. *Shepard v. Artuz,* 2000 WL 423519, at *6 (S.D.N.Y. April 19, 2000); *see Wray v. Johnson,* 202 F.3d 515, 525 (2d Cir.2000) (holding that petitioner must show that the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict"), quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). " 'Substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party.' " *United States v. Millar,* 79 F.3d 338, 342 (2d Cir.1996), quoting *United States v. Floyd,* 496 F.2d 982, 990 (2d Cir.1974); *see Shepard,* 2000 WL 423519, at *6.

■■■■ Here, after conducting a reasonable factual inquiry, the trial judge decided to discharge James Hawkins, a sworn juror. (T. at 292–94). Hawkins was acquainted with a person whom he believed to be a relative of Brumfield. (T. at 293). Also, the trial judge decided to discharge Hawkins because of Hawkins's statement that he would feel uncomfortable passing judgment on Brumfield, and didn't feel that he could be unbiased. (T. at 179, 182–83). Such factual determinations must be accorded broad deference under AEDPA. 28 U.S.C. § 2254(d)(2).

■■■■ Brumfield also fails to specifically raise a *Batson* claim regarding Mr. Hawkins's excusal. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, even if the Petition could be construed as raising a *Batson* claim, and assuming that this claim was exhausted at the state court level, the claim would, so construed, still fail. The *Batson* test applies to peremptory challenges. *Id.* at 84, 106 S.Ct. 1712. In this case, after being seated on the jury, Hawkins made it clear that he could not be unbiased and did not want to sit on the jury, the prosecutor made a challenge for cause. (T. at 184). The prosecutor's reasons for challenging the juror were race neutral and Brumfield made no objections to the contrary. The reasons for excusing Hawkins were based on the fact that the juror admitted that he could not be unbiased because of the juror's acquaintance with a person whom he believed to be a relative of Brumfield. In any event, Brumfield does not cite, and this court's research has not revealed, any case extending *Batson* to challenges for cause based on the circumstances presented here. Therefore, even construing liberally the Petition as raising a *Batson* challenge, such claim is futile and the Petition should be DISMISSED as to this ground.

## 5) *Cumulative Error*

Brumfield's fifth claim is that his conviction should be vacated in the interests of justice based upon the cumulative effect of the alleged constitutional errors detailed above. Petition ¶ 12 (Ground Five).

 In limited circumstances, cumulative errors may serve as the basis for habeas corpus relief. *See Sanders v. Sullivan,* 701 F.Supp. 1008, 1012 (S.D.N.Y. 1988). However, "implicit in such a claim is, first, that the alleged individual errors a petitioner seeks to aggregate are actually *errors.*" *Joyner v. Miller,* 2002 WL 1023141, at * 13 (S.D.N.Y. Jan. 7, 2002) (emphasis in the original) (collecting cases). "[T]he cumulative-error rule ... can only come into play after errors have been discovered; if no one error requires reversal, the whole body of error is to be assessed for prejudicial effect." *Sanders,* 701 F.Supp. at 1013.

 In addition, "in order for the cumulative effect of errors to warrant a new trial, the claimed errors must be 'so prejudicial that they rendered petitioner's trial [ ] fundamentally unfair.'" *Joyner,* 2002 WL 1023141, at *13, quoting *Collins v. Scully,* 878 F.Supp. 452, 460 (E.D.N.Y. 1995). The Supreme Court has "defined the category of errors that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "A habeas petitioner may not aggregate merely unfavorable rulings or events to show a lack of fundamental fairness." *Collins,* 878 F.Supp. at 460.

 In the present case, the court has examined the alleged errors and determined that they do not constitute errors of constitutional magnitude. Additionally, Brumfield "has not established that the alleged errors prejudiced his case to the point that his trial was rendered 'fundamentally unfair.'" *Joyner,* 2002 WL 1023141, at *13; *see also, Collins,* 878 F.Supp. at 460–61 (rejecting cumulative error claim where petitioner "failed to establish inherent or actual prejudice resulting from any of the alleged errors"); *Styles v. Van Zandt,* 1995 WL 326445, at *11 (S.D.N.Y. May 31, 1995) (denying habeas relief based upon cumulative error because "[m]any of petitioner's alleged errors were not errors at all, and consideration of the record as a whole demonstrates that petitioner received a fundamentally fair trial").

This court's review of the trial record demonstrates that Brumfield received a fundamentally fair trial. Brumfield's trial lasted over a week. The prosecution presented evidence and testimony from police officers and other witnesses to the events of December 16, 1994. Specifically, Sergeant Strassner testified as an eye witness on behalf of the prosecution as to how the events transpired. (T. at 483–543). The prosecution also presented testimony from a number of other witnesses who lived in the area surrounding where Sergeant Strassner was shot. (T. at 543–85, 587–753). These witnesses testified to the events leading up to, including, and following Sergeant Strassner being shot. (T. at 543–85, 587–753). The testimony elicited from these witnesses identified Brumfield as the person who shot Sergeant Strassner. *See* (T. at 543–85, 587–753). The prosecution presented evidence of a statement made by Brumfield whereby he admitted that he resisted Sergeant Strassner arresting him for the bank robbery because he did not want to return to jail. (T. at 1063–65).

Brumfield's defense counsel made competent arguments, thoroughly cross examined the witnesses who testified on behalf of the prosecution, despite the dearth of evidence favoring Brumfield, and present-

ed reasonably effective opening and closing statements. (T. at 543–85, 587–753). Brumfield has made no application to this or any other court asserting that his trial counsel was ineffective. Both the prosecution and the defense had the opportunity to offer suggested instructions they wanted included in the jury charge and also to make objections to that charge. (T. at 1280–89).

Accordingly, Brumfield's cumulative error claim lacks merit and the Petition should be DISMISSED on this basis.

### 6) *Harsh and Excessive Sentence*

Brumfield's sixth claim is that the trial judge's sentence was harsh and excessive. Petition ¶ 12 (Ground Six).

The court construes Brumfield's *pro se* Petition as raising an Eighth Amendment challenge to his sentence. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. XIII. As applied to sentences imposed after criminal convictions, the Eighth Amendment forbids extreme sentences that are "grossly disproportionate" to the crime. *Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

Moreover, it is well-settled that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992); *see also, Thompson v. Lord,* 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (collecting cases). "A sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense." *Thompson,* 2002 WL 31678312, at *8, citing *White,* 969 F.2d at 1383; *Lou v. Mantello,* 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001).

In the instant case, Brumfield has not alleged, nor does it appear, that the sentences imposed exceeded the range available to Judge Connell under New York law. Robbery in the First Degree and Aggravated Assault upon a police officer are class B violent felonies. N.Y.Penal Law §§ 160.15(4), 120.11. Under New York law, the maximum term of imprisonment for such felonies is twenty-five years. N.Y. Penal Law § 70.02. Grand Larceny in the Third Degree is a class D felony, punishable by a maximum term of seven years. N.Y.Penal Law §§ 155.35, 70.00(2)(d). Here, Brumfield received 12 ½ to 25 years on the Aggravated Assault count to run consecutively to a sentence of 12½ to 25 years on Brumfield's Robbery in the First Degree conviction. (S. at 22–23). Those sentences were to run concurrently with a sentence of 2 1/3 to 7 years for Grand Larceny in the Third Degree. (S. at 23). Thus, the lengths of the sentences imposed by Judge Connell were manifestly authorized by and within the limits of the applicable state statutes. Brumfield's claim based upon this ground is therefore meritless and the Petition should be DISMISSED as to this ground.

### CONCLUSION

Based on the foregoing, the Petition should be DISMISSED. Further, as the court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue. 28 U.S.C. § 2253(c)(2) (1996).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of

service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and Respondent.

SO ORDERED.

November 12, 2003.